1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**O**

# United States District Court
# Central District of California

| | |
|---|---|
| ILAN AVNIELI; and HEATHER AVNIELI,<br><br>                    Plaintiff,<br><br>          v.<br><br>RESIDENTIAL CREDIT SOLUTIONS, INC.; THE BANK OF NEW YORK MELLON F/K/A/ THE BANK OF NEW YORK AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATE HOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2004-20T1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-20T1; FIRST AMERICAN TITLE INSURANCE COMPANY; and DOES 1-20,<br><br>                    Defendants. | Case № 2:15-cv-02877-ODW (PJW)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [27]** |

## I.   INTRODUCTION

After falling behind on their mortgage payments, Plaintiffs Ilan Avnieli and Heather Avnieli attempted to modify their loan with Defendant The Bank of New York Mellon ("Bank")—the ultimate successor of Provident Savings Bank, F.S.B. ("Provident").  The Avnielis allege that Bank, along with trustee First American Title Insurance Company ("First American") and its servicing agent Residential Credit Solutions ("RCS"), recorded a notice of default prematurely, failed to properly contact Plaintiffs, engaged in dual tracking, failed to provide Plaintiffs with a single point of contact, failed to competently review foreclosure documents, and were negligent and negligent per se.   Defendants removed the case and then moved to dismiss.  Defendants contend that the federal Home Owners' Loan Act ("HOLA") preempts the Avnielis' claims and that, in the alternative, the Avnielis have failed to state any valid claims.   The Court finds that HOLA does not preempt the Avnielis' claims and accordingly **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.[1]

## II.   FACTUAL BACKGROUND

On April 7, 2004, the Avnielis obtained a $592,000.00 loan from Provident, which was secured with a Deed of Trust against the real property at 6200 Feral Avenue, Agoura Hills, California.  (FAC ¶ 1; RJN Ex. 1.)[2]  Provident is a federal savings association, regulated at the time by the Office of Thrift Supervision ("OTS").

On March 12, 2014, a Corporation Assignment of Deed of Trust was recorded, which assigned the beneficial interest under the deed of trust to Bank, as the successor to Provident.  (FAC ¶ 11; RJN Ex. 2.)  On June 2, 2014, Bank recorded a Substitution

---

[1]     As noted in the Court's prior Order (ECF No. 32), the Court deemed the matter appropriate for decision without oral argument after considering Plaintiff's moving papers.  Fed. R. Civ. P. 78(b); L.R. 7-15.

[2] The Court **GRANTS** Defendants' Request for Judicial Notice to the extent that the Court uses the documents adduced in this Order.  (ECF No. 5.)

of Trustee, which substituted First American as trustee under the Deed of Trust. (FAC ¶ 33; RJN Ex. 3.)

The Avnielis defaulted on their loan, and on June 30, 2014, when they were at least $47,642 behind on their payments, First American recorded a Notice of Default and Election to Sell Under Deed of Trust.  (FAC ¶ 34; RJN Ex. 4.)  The Avnielis failed to cure their default and on September 29, 2014, First American recorded a Notice of Trustee's Sale.  (FAC ¶ 42; RJN Ex. 5.)

On March 18, 2015, the Avnielis filed suit against Defendants in Los Angeles County Superior Court alleging four violations of California's Home Owners' Bill of Rights ("HOBR"), negligence and negligence per se, and a violation of California's Unfair Competition Law.  (Not. of Removal Ex. A.)  Defendants thereafter removed the action on January 2, 2014, invoking diversity jurisdiction.  (ECF No. 1.)

On August 17, 2015, Defendants moved to dismiss the Avnielis' First Amended Complaint ("FAC") for failure to state a claim.  (ECF No. 27.)  A timely opposition and reply was filed.  (ECF Nos. 30, 31.)  That Motion is now before the Court for decision.

## III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.   DISCUSSION

Defendants contend that HOLA preempts the Avnielis' California Homeowner Bill of Rights ("HBOR") claims and that the Avnielis' other causes of action fail to state a claim on their allegations. The Court finds that HOLA does not preempt the HBOR as applied to Defendants. The Court will address each issue in turn.

**A.   HOLA Preemption**

Because the Avnielis' loan originated with a federal savings bank, the Defendants argue that HOLA preemption applies to any and all conduct of current beneficiary, Bank, and/or its servicing agent, RCS.

Federal savings associations are organized under HOLA, and OTS supervises them. *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 970–71 (N.D. Cal. 2010); 12 U.S.C. §§ 1462(3) ("The term 'federal savings association' means a federal savings association or a federal savings bank chartered under section 1464 of this title."), 1464 (authorizing charters for federal savings associations). In contrast, OCC

1    supervises national banks, also called national associations, under a different set of

2    regulations.  *See Appling*, 745 F. Supp. 2d at 970–71; 12 C.F.R. § 7.100 *et seq.*

3          OTS promulgated a regulation preempting any state laws affecting federal

4    savings associations' operations "to give federal savings associations maximum

5    flexibility to exercise their lending powers in accordance with a uniform federal

6    scheme of regulation."  12 C.F.R. § 560.2(a).  The regulation states that "federal

7    savings associations may extend credit as authorized under federal law . . . without

8    regard to state laws purporting to regulate or otherwise affect their credit activities"

9    with few exceptions.  *Id.*, § 560.2(c).  OTS also set forth a nonexhaustive list of state

10   laws that the regulation preempts.  *Id.* § 560.2(b).

11         Here, Defendants spend several pages of their Motion arguing which of the

12   Avnielis' claims are subject to HOLA preemption and whether HOLA preemption in

13   fact applies to Defendants.  Although Defendants' predecessor, Provident, was a

14   federal savings association, Defendant Bank is not.  Rather, Bank is a national bank

15   organized under different laws and subject to supervision by a different federal

16   governmental entity.  *See Appling*, 745 F. Supp. 2d at 970–71; 12 C.F.R. § 7.100 *et*

17   *seq.*

18         This is not the first time that a court has considered whether HOLA preemption

19   applies to claims where a national savings bank is the beneficiary of a loan that

20   originated with a federal savings bank.  In fact, many courts have held that HOLA

21   preemption still applies to the national savings banks when this occurs.  *See, e.g.*,

22   *Castillo v. Wachovia Mortg.*, No. C-12-0101 EMC, 2012 WL 1213296, at *4 (N.D.

23   Cal. Apr. 11, 2012); *Copeland-Turner v. Wells Fargo Bank*, 800 F. Supp. 2d 1132,

24   1144 (D. Or. 2011); *Appling*, 745 F. Supp. 2d 971; *Lopez v. Wachovia Mortg.*, No. C

25   10-01645 WHA, 2010 WL 2836823, at *2 (N.D. Cal. July 19, 2010).  But there is no

26   controlling authority from the Supreme Court or the Ninth Circuit on this issue.

27         The Court finds that it must follow the plain language of HOLA and the OTS

28   regulation.  By its own terms, HOLA only applies to "federal savings associations"

1    like Provident.  12 C.F.R. § 1462(3).  The preemption provision therefore also only

2    applies to federal savings associations.  OTS recognized as much when it repeatedly

3    used that term in the regulation.  For example, OTS intended "to give *federal savings*

4    *associations* maximum flexibility to exercise their lending powers in accordance with

5    a uniform federal scheme of regulation" and thus "occupie[d] the entire field of

6    lending regulation for *federal savings associations*."  *Id.* § 560.2(a) (emphasis added).

7    In fact, in construing this regulation, OTS recognized the difference between the two

8    types of banks.  *See* Lending and Investment, 61 Fed. Reg. 50,951, 50,965 (Sept. 30,

9    1996).

10        Lastly, the regulation's preemptive force does not hinge on genesis of the loan;

11   rather, the nature of the bank at issue is the defining criterion.  Since Bank is not a

12   federal savings association, the Court finds that HOLA does not preempt any claims

13   against the bank.  *See Stalnaker v. Fid. & Deposit Co. of Md.*, 2:10-CV-00964, 2011

14   WL 560675, at *3 (S.D.W. Va. Feb. 8, 2011) ("[The bank] has cited no authority for,

15   and the case law does not support an assertion that a successor in interest to a federal

16   savings bank is subject to HOLA preemption for activities that took place *after* the

17   federal savings bank dissolved.").

18        Thus, the Court finds that HOLA does not preempt the Avnielis' state law

19   claims.

20   **B.    Unfair Competition Law**

21        The Avnielis bring a claim against Defendants for violating California Unfair

22   Competition Law ("UCL").  The UCL prohibits "any unlawful, unfair or fraudulent

23   business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal.

24   Bus. & Prof. Code § 17200.  Defendants contend that the Avnielis' UCL claim fails

25   for several reasons.

26        *1.    UCL standing*

27        To have standing to sue under the UCL, a plaintiff must have "suffered injury in

28   fact and [have] lost money or property as a result of the unfair competition."  *Id.* §

17204.   The California Supreme Court held that to satisfy this requirement, the plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that the economic injury was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).

Defendants argue that the Avnielis have not alleged any injury or a loss of money or property caused by Defendants' conduct because the foreclosure sale has not occurred yet.  Defendants contend that any of the Avnielis' injuries would be due to their own failure to pay their mortgage as they promised—not Defendants' actions.

But the Avnielis do allege several economic injuries they suffered as a result of Bank's conduct, including money spent preventing foreclosure on their home, harm to their credit, and payment of interest, legal fees, and other costs.  (FAC ¶ 179 – 180.) These economic detriments easily satisfy the California Supreme Court's interpretation of section 17204.  *See Kwikset*, 51 Cal. 4th at 323 (interpreting the phrase "lost money or property").

The Court therefore finds that the Avnielis have standing to sue under the UCL.

2.   *"Unlawful" conduct*

UCL's "unlawful" prong "borrows" violations of other laws such that a "defendant cannot be liable under § 17200 for committing unlawful business practices without having violated another law." *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) (internal quotation marks omitted); *see also Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).

Defendants attack the Avnielis' allegations that it violated California Civil Code sections 2932.55, 2923.6, 2923.7 and 2924.17.

a.  Cal. Civ. Code §  2923.55

The Avnielis allege that Defendants violated section 2923.55 by: (1) failing to send them the written statement required by section 2923.55(b)(1)(B) and (2) failing to make "initial contact" with Plaintiffs as required by section 2923.55(b)(2).

Section 2923.55(b)(1)(B) states that a mortgage servicer may not record a notice of default until it sends the following information in writing to the borrower:

> (B) A statement that the borrower may request the following:
>> (i) A copy of the borrower's promissory note or other evidence of indebtedness.
>> (ii) A copy of the borrower's deed of trust or mortgage.
>> (iii) A copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose.
>> (iv) A copy of the borrower's payment history since the borrower was last less than 60 days past due.

Cal. Civ. Code § 2923.55(b)(1)(B).

The Avnielis allege that they never received this information, and yet Defendants still recorded the Notice of Default. (FAC ¶ 8.) As such, the Avnielis have stated a violation under section 2923.55(b)(1)(B). *See Johnson v. SunTrust Mortgage, Inc.*, No. CV 14-2658 DSF PJWX, 2014 WL 3845205, at *4 (C.D. Cal. Aug. 4, 2014) (finding that Plaintiffs stated a claim under section 2923(b)(1)(B) because the Plaintiffs alleged that they never received the required information). The Court thus denies Defendants' Motion as to this alleged violation.

Under section 2923.55(b)(2), at least 30 days prior to filing a notice of default, "[a] mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Here, the Avnielis concede that they had several discussions with RCS regarding loan modification prior to the Notice of Default. (See FAC ¶¶ 41–43, 46, 48.) Although they were not satisfied with the result of their modification applications or with the information they received from RCS, this provision only "contemplates contact and some analysis of the borrower's financial situation." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 877 (N.D. Cal. 2010);

see also *Brown v. U.S. Bancorp*, No. CV 11–6125 CAS (PJWx), 2012 WL 665900, at *7 (C.D. Cal. Feb. 27, 2012) ("Because plaintiffs admit that they discussed loan modifications with [defendant] well before the notice of default was recorded, their allegation that defendants failed to comply with § 2923.5[5] fails."). The Court accordingly grants Defendants' Motion as to this alleged violation.

### b.  Cal. Civ. Code § 2923.6

The Avnielis allege that Defendants violated California's law against dual tracking on three separate instances.

The HBOR forbids a mortgage servicer, such as RCS, from "record[ing] a notice of default or notice of sale . . . while the [borrower's] complete first loan modification is pending." Cal. Civ. Code § 2923.6(c).

The Avnielis' first allegation of dual tracking arising under section 2923.6(c) occurred when: (1) the Avnielis submitted a loan modification to RCS in November 2013, (2) RCS confirmed the loan package was complete on March 11, 2014, and (3) First American, as an agent for RCS and Bank, recorded a Notice of Default on June 30, 2014 without providing the Avnielis with a determination on their pending loan modification application. This is sufficient to state a claim under section 2923.6(c).

Similarly, the Avnielis' second allegation of dual tracking arising under section 2923.6(c) occurred when: (1) the Avnielis submitted a loan modification to RCS in August 2014, (2) RCS confirmed the loan package was complete on September 15, 2014, and (3) First American, as an agent for RCS and Bank, recorded a Notice of Trustee's Sale on September 29, 2014 without providing the Avnielis with a determination on their pending loan modification application. This is also sufficient to state a claim under section 2923.6(c).

Defendants claim that the first two allegations of dual tracking are moot because the Avnielis withdrew their prior, pending applications and submitted a new application in November 2014, thus remedying the violations. The Court disagrees. A servicer's HBOR violations are only corrected and remedied after it rescinds the

1   notice of default.  *Diamos v. Specialized Loan Servicing LLC*, No. 13-CV-04997 NC,

2   2014 WL 3362259, at *5 (N.D. Cal. July 7, 2014) (holding that a cause of action for

3   dual tracking is moot when defendant's rescinded notice of default); *Jent v. N. Trust

4   Corp.*, No. 13–cv–01684 WBS, 2014 WL 172542, at *5 (E.D. Cal. Jan. 15, 2014)

5   (holding that liability was precluded when defendants had rescinded the notice of

6   default and no trustee's deed upon sale had been recorded); *Pearson v. Green Tree

7   Servicing, LLC*, No. 14-CV-04524-JSC, 2015 WL 632457, at *2 (N.D. Cal. Feb. 13,

8   2015) (explaining that if the *servicer* takes action to correct the HBOR violation

9   before proceeding to foreclosure, no liability results) (emphasis added).

10      Because the Avnielis sufficiently stated claims under section 2923.6(c) and

11   Defendants have failed to rescind the Notice of Default, the violations have not been

12   properly corrected or remedied.  The Court consequently denies Defendants' Motion

13   as to this alleged violation.

14      The Avnielis third allegation of dual tracking arises under section 2923.6(e),

15   which forbids a mortgage servicer, such as RCS, from recording a notice of default or

16   notice of sale while the borrower's complete loan modification appeal is pending.

17      The Avnielis' third allegation of dual tracking occurred when: (1) the Avnielis'

18   submitted a loan modification to RCS on December 22, 2014, (2) RCS confirmed the

19   loan package was complete on January 29, 2015, (3) RCS denied the Avnielis' loan

20   modification application on January 30, 2015, (4) the Avnielis' appealed the denial on

21   February 17, 2015, and (5) First American, as an agent for RCS and Bank, recorded

22   the Notice of Default on June 20, 2015 without providing the Avnielis with a

23   determination on their pending appeal.

24      This is sufficient to state a claim under section 2923.6(e).  While Defendants

25   presented evidence that on March 17, 2015, RCS wrote to the Avnielis' rejecting their

26   appeal and informing them that the denial stands, this letter is outside the scope of the

27   complaint and not something of which the Court may take judicial notice.  (Mtn. 3,

28

1  RJN 6).   The Court consequently denied Defendants' Motion as to this alleged

2  violation.

3                   c.   Cal. Civ. Code § 2923.7

4       The Avnielis next allege that Defendants violated section 2923.7, which

5  requires the lender to assign a Single Point of Contact (SPOC).   Section 2923.7(a)

6  provides that when a borrower requests a foreclosure prevention alternative, "the

7  mortgage servicer shall promptly establish a single point of contact and provide to the

8  borrower one or more direct means of communication with the single point of

9  contact."   Among other things, that single point of contact is responsible for

10  "[c]oordinating receipt of all documents associated with available foreclosure

11  prevention alternatives and notifying the borrower of any missing documents

12  necessary to complete the application."   *Id*. § 2923.7(b)(2).   In addition, the SPOC

13  must have "access to current information and personnel sufficient to timely,

14  accurately, and adequately inform the borrower of the current status of the foreclosure

15  prevention alternative," and ensure "that a borrower is considered for all foreclosure

16  prevention alternatives offered by, or through, the mortgage servicer, if any."   *Id*. §

17  2923.7(b)(3) – (4).

18       Defendants argue that the Avnielis' section 2923.7 claim fails because their

19  allegations show that Defendants complied with section 2923.7's SPOC requirement

20  by appointing a compliant team of personnel.   (Mot. 13.)

21       "Although the rule contemplates a single point of contact that is actually a team

22  of personnel, *see* Cal. Civ. Code § 2923.7(e), courts have found that where a plaintiff

23  sufficiently alleges that the multiple individuals handling her loan application lack the

24  knowledge or authority to constitute a team of personnel as contemplated under §

25  2923.7(e), the plaintiff's claim should survive a motion to dismiss."   *Gardenswartz v.*

26  *SunTrust Mortg., Inc.*, No. 14–CV–8948, 2015 WL 900638, at *18–19, (C.D. Cal.

27  Mar. 3, 2015) (citing *Diamos*, 2014 WL 3362259, at *4).

28

The Avnielis allege they were transferred from representative to representative; that they often received conflicting or inconsistent information; that different representatives repeatedly asked them to re-submit documents they had previously submitted to other representatives; and that, at times, they could not get someone on the phone familiar with their file.  (FAC ¶¶ 120 – 121.)  Even accepting that the "single point of contact" may be a team, the team members must "have the ability and authority to perform the responsibilities described in [§ 2923.7(b)-(d).]"  Cal. Civ. Code § 2923.7(e).  The FAC presents allegations that plausibly suggest Defendants violated this command.  Thus, the Court denies the Motion to Dismiss as to the alleged violations of section 2923.7.

### d.  Cal. Civ. Code § 2924.17

The Avnielis next allege that Defendants violated section 2924.17, which provides that certain foreclosure documents "shall be accurate and complete and supported by competent and reliable evidence."  Section 2924.17 is designed to prevent "robo-signing."  *See Marquez v. Wells Fargo Bank, N.A.*, No. 13–2819, 2013 WL 5141689 (N.D. Cal. Sept. 13, 2013) ("Section 2924.17 prohibits the practice of robo-signing, in which servicers sign foreclosure documents without determining the right to foreclose."); *Sanguinetti v. CitiMortgage, Inc.*, No. 12–5424, 2013 WL 4838765 (N.D. Cal. Sept. 11, 2013) ("Section 2924.17 prohibits 'robo-signing,' or executing foreclosure documents without 'substantiat[ing] the borrower's default and the right to foreclose.'").

The Avnielis argue that Defendants' violations of sections 2923.55, 2923.6, and 2923.7 are sufficient to state a claim under section 2924.17.  However, the conduct complained of by Plaintiffs is not what the statute is intended to prevent.  The statute is intended to prevent robo-signing, of which the Avnielis did not allege.  The Court thus grants Defendants' Motion as to the alleged violation.

### 3. "Fraudulent" conduct

A "fraudulent" business act or practice is one which is likely to deceive members of the public. *Weinstat v. Dentsply Intern., Inc.*, 180 Cal. App. 4th 1213, 1223 (2010). UCL claims premised on fraudulent conduct trigger the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

Here, the FAC fails to meet the heightened pleading standard required for fraud claims because the Avnielis only vaguely allege how members of the public are likely to be deceived by Defendants' actions. They allege that Defendants recorded the Notice of Default and Notice of Trustee's Sale without accurate, complete, competent, and reliable evidence substantiating the default and that the public is likely to be confused by these false documents. (*E.g.*, FAC ¶ 136.) However, these allegations are insufficient to meet the heightened pleading standard required to plead a fraudulent business act.

### 4. "Unfair" conduct

In interpreting the UCL's "unfair" term, the California Supreme Court held that "the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).

The Avnielis have not alleged how Defendants' actions rose anywhere near the mandatory level of anticompetitive activity, and do not state how they could amend their Complaint to plausibly make such an allegation. The Court thus grants Defendants' Motion as to this alleged violation.

### C. Negligence

Defendants further contend that the Avnielis failed to state a claim for negligence because lenders do not generally owe their borrowers a duty of care.

13

1      Under California law, the "existence of a duty of care owed by a defendant to a

2  plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart*

3  *Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (1991).  Generally, a financial

4  institution does not owe its borrower a duty of care "when the institution's

5  involvement in the loan transaction does not exceed the scope of its conventional role

6  as a mere lender of money."  *Id.* at 1096.  A lender exceeds its "conventional role" as

7  a money lender when it "actively participates" in the financed enterprise "beyond the

8  domain of the usual money lender."  *Wagner v. Benson*, 101 Cal. App. 3d 27, 35

9  (1980) (quoting *Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850, 864 (1968)).

10      The Avnielis do not allege in their FAC any facts suggesting that Defendants

11  exceeded the normal role of a lender during the default/foreclosure process.  Under

12  their negligence claim, the Avnielis simply reiterate that Defendants failed to comply

13  with the procedures set forth in Civil Code sections 2923.55, 2923.6, 2923.7, and

14  2924.17, as stated above.  (FAC ¶ 156.)

15      While the Avnielis' allegations may make out statutory violations if true, they

16  do not establish that Defendants "actively participate[d]" in the Avnielis' loan

17  "beyond the domain of the usual money lender."  *See Wagner*, 101 Cal. App. 3d at 35.

18  Rather, these actions—or inactions such as they are—fall squarely within the class of

19  conduct a lender might take during the default process.

20      Plaintiffs claim for negligence per se fails for the same reason.  *Spencer v. DHI*

21  *Mortg. Co., Ltd.*, 642 F. Supp. 2d 1153, 1162 (E.D. Cal. 2009) ("[A]n underlying

22  claim of ordinary negligence must be viable before the presumption of negligence of

23  Evidence Code section 669 can be employed." (citing *Cal. Serv. Station & Auto*

24  *Repair Ass'n v. Am. Home Assurance Co.*, 62 Cal. App. 4th 1166, 1178 (1998))).  The

25  Court thus grants Defendants' Motion on this ground.

26      ///

27      ///

28      ///

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss as to the following claims: (1) the alleged violations of Civil Code sections 2923.55(b)(2), 2924.17; (2) the alleged violation of the UCL's unfair competition prong; and (3) negligence and negligence per se.  (ECF No. 38.)  The Court **DENIES** the Avnielis' Motion on all other grounds.  (*Id.*)   The Avnielis may amend their Complaint within 14 days with respect to section 2924.17, the UCL's unfair competition prong, and negligence and negligence per se only.

**IT IS SO ORDERED.**

October 9, 2015

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**